Vasquez v Vasquez (2004 NY Slip Op 50719(U))

[*1]

Vasquez v Vasquez

2004 NY Slip Op 50719(U)

Decided on July 2, 2004

Supreme Court, Queens County

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and will not be published in the printed Official Reports.

Decided on July 2, 2004

Supreme Court, Queens County
KAREN VASQUEZ, Plaintiff
against
LEONEL VASQUEZ, Defendant
3631/03

Sidney F. Strauss, J.
Defendant Leonel Vasquez seeks an order directing the plaintiff, Karen Vasquez, to return the three children of their marriage, Alexandra (d.o.b. 4/24/92), Nicole (d.o.b. 9/12/94) and Brandon (d.o.b. 8/22/97), to the geographic area delineated in the parties Stipulation of Settlement (hereinafter "stipulation") of January 24, 2003, which was incorporated by reference into the Judgment of Divorce (hereinafter "judgment") entered June 2, 2003. That document limited relocation of the children to a thirty-five (35) mile radius from the defendant father's residence.
Although the plaintiff acknowledges that she unilaterally relocated the children to an area that exceeded the geographic limitation contained in the stipulation and judgment, she nonetheless opposes the application by showing that it was in the best interests of the children to be able to move to Pennsylvania, where the plaintiff's parents and sister resided.
By order of the Hon. Joseph P. Dorsa ,dated December 16, 2003, the Court determined that it was imperative that a hearing be held to determine whether a relocation would serve the children's best interests, including, but not limited to such factors as: each parent's reasons for seeking or opposing the move, the quality of the relationships between the children and the custodial and non-custodial parent, the impact of the move on the quantity and quality of the children's contact with the non-custodial parent, the degree to which the custodial parent's and children's life may be enhanced economically, emotionally and educationally by the move, and the feasibility of preserving the relationship between the [*2]non-custodial parent and the children through suitable visitation arrangements.[FN1] The hearing was held on May 14, May 18 and June 10, 2004.
Plaintiff Karen Vasquez testified that her work experience in Woodhaven, New York commenced with minimum wage employment at a hardware store. Mrs. Vasquez ultimately worked her way up to a $30,000 per year job at a reinsurance company. She took a maternity leave, went back to work part-time and ceased working upon becoming pregnant for the second time. After the birth of the parties' second child, she returned to work from 5-9 p.m., 6 days per week. Mrs. Vasquez further testified that the defendant worked from 6 a.m. to 2 p.m. and occasionally helped out with the children until she returned home. In 1997, a third child was born. The plaintiff testified that sometime shortly thereafter, the defendant stopped parenting until 1999. The marital house was sold, the $30,000 in equity was split and the parties went their separate ways.
The plaintiff testified that from 1999 to 2003, she and the children lived in a home that was too small and was infested with mice and roaches. The plaintiff recounted her attempts to secure other housing in Queens while at the same time working herself up to an hourly salary of $9.25 at the same place of employment. Child care apparently became an issue between the parties during this same time period: the defendant stopped performing child care functions and the children were allegedly left with strangers, some of whom were unreliable, thus causing the plaintiff to miss work, resulting in a loss of salary. These events apparently created enormous stress, resulting in the plaintiff being compelled to bring the children to work with her. The plaintiff testified that she did everything within her power to create a stable and safe living environment for herself and her children. She further stated that when all else failed, she moved, in August 2003, to Pennsylvania to live with her family, even though she was aware that it was more than 35 miles away and in violation of the judgment. The plaintiff testified that she discussed the idea of moving to Pennsylvania with the defendant after the divorce inasmuch as she was confident she could make $25,000 per year and have free day care due to the presence of her parents and sister.
Since relocating to Pennsylvania, the plaintiff has managed to purchase a home, in which each child has his or her own bedroom. The home is situated on an acre of land upon which the children can play. The plaintiff testified that, prior to the move, she researched the programs offered by the local school system and found them to be superior to those which are offered by the New York City school system.
The plaintiff testified, in more than one context, that her main concern has always been the well being of her children, especially while she was at work. The plaintiff's position was that, in addition to all of the benefits cited above, the move to Pennsylvania completely removed this concern, as her children would always be in the company of loving relatives. At the same time, she maintained that she would do whatever was possible to help the defendant stay involved with his children. In order to continue the defendant's involvement with his children, the plaintiff, on a voluntary basis and in the absence of any agreement or Court order, has brought the children to Queens every other weekend to be with the defendant. The Court notes that the defendant has never gone to Pennsylvania to visit his children, examine their living environment or check on their educational opportunities.
[*3]
The cross-examination of the plaintiff by defendant's counsel and the children's Law Guardian, Eugene F. Crowe, Esq., consisted of questions about the parties' lifestyle during and after the marriage. The testimony revealed that the children were all doing well academically and each was beginning to get involved in after-school activities. When questioned further, Mrs. Vasquez indicated that the move provided more opportunities for all and that her primary concerns in moving were child care and financial security. The Court notes that, despite the lack of evidence supporting such a contention, the Law Guardian's position is that the move has been "emotionally deleterious" to the children. The Court disagrees. See,Sienkwicz v. Sienkwicz, 298 AD2d 396, 751 NYS2d 398 (2d Dept. 2002) (trial court not obligated to accept the recommendations of the Law Guardian and the court-appointed forensic expert).
Also testifying was Nancy Nehraz, one of the elementary school teachers who taught Alexandra and Brandon at P.S. 66 in Queens. Ms. Nehraz' testimony was that, from her vantage point, the defendant had almost no interaction with the children. This testimony was substantially corroborated by that of Diane Kennedy, an individual involved in a baseball program in which at least one of the children participated.
Defendant Leonel Vasquez testified that, prior to the move to Pennsylvania, he resided ten (10) minutes from his children. Mr. Vasquez described his activities with the children, as well as those with his nieces and nephews, who also live in the metropolitan area. He stated that, on weekends, he would take the children to the movies, fishing, boating and cooking although he was never asked to provide any specific information about these activities such as time or place. When questioned about the move to Pennsylvania, Mr. Vasquez testified that when he spoke to his ex-wife before the move, he stated that he "cannot blame her if she wanted to move to the Poconos, she had family there."
Although Mr. Vasquez often spoke of his desire to remain heavily involved with his children, it would appear that his statements are belied by his actions. It is uncontroverted that prior to the move to Pennsylvania, Mr. Vasquez had already stopped his mid-week visits with the children, as it had become increasingly more difficult for him to help them finish their homework and absorb the additional expense of taking them out to eat. Mr. Vasquez stated that he occasionally made supper for the children but nevertheless stopped these visits.
Significantly, when asked by the Court if he would exercise expanded visitation as was suggested by the Court-appointed forensic evaluator, Dr. Marvin J. Aronson, if the move should remain permanent, Mr. Vasquez indicated that he could not spend any portion of the summer recess or other holidays with the children, inasmuch as that was his busiest work season in the course of his employment as a worker on a beer sales route.
In his testimony, Dr. Aronson stated that he had conducted clinical interviews of the parties and their three children and, in addition, observed the children in the company of each parent, performed psychological testing of Leonel Vasquez and visited the defendant's residence. No home visit was made to Mrs. Vasquez' home in Pennsylvania. Dr. Aronson also conducted various collateral interviews with the children's grandparents, teachers and neighbors and also reviewed numerous documents.
Dr. Aronson's testimony consisted mainly of his concern for the maintenance of a strong child-father relationship, which he perceived to have existed prior to the move. He referred to the five factors identified for inclusion in the analysis of the best interests of the children as the same were enunciated in Tropea v. Tropea, 87 NY2d 727, 642 NYS2d 575 (Ct. App. 1996). Dr. Aronson opined that the move to Pennsylvania would have a great impact on both the quantity [*4]and quality of the children's future contact with their father. However, when questioned by the Court as to what would be the difference if the children lived 35 miles away, as the parties had previously agreed, or 100 miles away, as is the case now, his response was an instant "none."
Acknowledging that the children's visitation with Mr. Vasquez had not changed, in either quantity or quality, since their move to Pennsylvania, Dr. Aronson further stated that collateral interviews, conducted by telephone with individuals at the children's new school, indicated that their level of performance had not changed despite the necessary adjustment to a new school, new classmates and new surroundings. Other than expressing that they missed spending more time with their father, the children exhibited no apparent ill effects from their parent's divorce or their relocation. Dr. Aronson's recommendation to the Court was that the relocation should be denied but also contained a number of qualifications, indicating to this Court that certain accommodations could and should be made if the status quo were to remain.
The Court, accordingly, rejects the ultimate recommendations of its own expert, as it is empowered to do. Salerno v. Salerno, 273 AD2d 818, 708 NYS2d 539. It is well settled that the Court is not required to "accept the recommendations of the court-appointed psychologist." Berstell v. Berstell, 272 AD2d 566, 708 NYS2d 451 (2d Dept. 2000). Nonetheless, Dr. Aronson's overall findings and recommendations on the children's relocation were not "arbitrarily disregarded" by the Court. See, Young v. Young, 212 AD2d 114, 628 NYS2d 957 (2d Dept. 1995).
Upon all of the foregoing, defendant's motion is denied. The Court notes that the instant action is immediately distinguishable from the factual premise in Tropea, supra, in that, here, the Vasquez' agreed to a relocation of no more than 35 miles wherein there was no such agreement in Tropea. Additionally, Tropea dealt with an application for permission to relocate the children outside of the parties' county of residence, unlike the factual premise here, in which one of the parties is seeking to return children that have already been relocated and settled, albeit without leave of court. Plaintiff's relocation without leave of court is not fatal to her opposition to the instant application, but is merely one of the factors to be considered. Coryell P. v. Louis J.P., 231 AD2d 701, 648 nys2d 122 (2d Dept. 1996).
In analyzing the questions of the quality of the relationship between the children and the custodial and non-custodial parents as well as the quality and quantity of the children's future contact with the non-custodial parent, the Court needs to look no further than to the testimony of movant Leonel Vasquez himself: he had discontinued his mid-week visits prior to the children's relocation and stated that he could not avail himself of more lengthy, if less frequent, summer and holiday visits due to the nature of his employment. Lastly, Mr. Vasquez stated that since the relocation, his visits had been no different than those he exercised before the family moved.
In arriving at its decision, the Court places great emphasis on the fact that the Court-appointed forensic evaluator, Dr. Marvin Aronson, testified that whether the children lived 35 miles away (the distance stipulated to by the parties) or 100 miles (the distance due to the instant relocation), neither the quality nor the quantity of the father's involvement with his children would be different in terms of the outcome most likely to serve the best interests of the children. The Court finds that, despite Dr. Aronson's opinion, the Vasquez children's lives have, and will, be enhanced economically, emotionally and educationally by this move.
The financial situation of Mrs. Vasquez, and by extension, the children, has greatly [*5]improved. The children have adjusted to their new locale, as exhibited by the lack of variance in their school performance despite new surroundings, new classmates and a completely new environment. Emotionally, the children have shown no ill effects as a result of the move and it is the opinion of this Court that the children will ultimately be enriched due to their close proximity to their grandparents, aunt and cousin. The Court is satisfied that Mrs. Vasquez' reasons for moving were quite compelling and were made solely with the best interests of the children in mind: her ability to live close to relatives upon whom she could rely for dependable, as well as affordable (in this case, free of charge) child care during the time of her employment, the opportunity to live in a one family home with some play area and individual rooms for each child.
Finally, the Court notes that it is impressed with the level of care and love of the children shown by Mr. Vasquez. Thus, certain visitation provisions are necessary: (1) Mrs. Vasquez is directed to continue the same visitation schedule that has been observed since the move to Pennsylvania took place: bringing the children to Queens every other weekend; (2) Mr. Vasquez shall have an additional weekend visit every three (3) months; (3) when holidays create a three (3) day weekend, Mrs. Vasquez is directed to make such weekend a visitation weekend, which may involve a switch of some weekends in order to accomplish this; the parties are directed to do so. Furthermore, despite Mr. Vasquez' testimony to the contrary, he is awarded two weeks of uninterrupted visitation during the summer, one-half of the Christmas, semester and Easter recesses. The parties shall arrange the days and dates between themselves. Mr. Vasquez' failure to exercise these visitation privileges shall in no way be interpreted as a waiver of the rights contained in this order.
In light of the foregoing, it is axiomatic that the branch of the motion seeking an award of sole legal and physical custody to Mr. Vasquez if the plaintiff refuses to return to the 35 mile limit is denied. The record is devoid of any compelling testimony supportive of such a change.
A copy of this order has been mailed to counsel for the respective parties.
Dated: July 2, 2004
.........................
SIDNEY F. STRAUSS, J.S.C.
Footnotes

Footnote 1: A law guardian and a forensic evaluator were appointed in order to accomplish these aims.